IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AX WIRELESS LLC, § <br> § <br> *Plaintiff*, § <br> v. §     CIVIL ACTION NO. 2:22-CV-00279-JRG-RSP <br> § <br> HP INC., § <br> § <br> *Defendant*. § | |

## MEMORANDUM ORDER

Before the Court is Defendant HP Inc.'s Motion to Transfer to the Northern District of California (**Dkt. No. 75**). After consideration, the Court concludes that HP has not met its burden of showing that the Northern District of California would be a clearly more convenient venue than this forum. Accordingly, the Court **DENIES** HP's Motion to Transfer.

### I.   BACKGROUND

AX Wireless LLC filed its Complaint on July 22, 2022 (Dkt. No. 1) and an amended complaint on October 17, 2022 (Dkt. No. 16) following HP's filing of its Motion to Dismiss for Improper Venue (Dkt. No. 13). AX Wireless asserts that HP products including Wi-Fi 6 or 802.11AX transceivers infringe U.S. Patent Nos. 9,584,262; 9,614,566; 9,973,361; 10,079,707; 10,291,449; 10,554,459; 10,917,272; and 11,212,146 (the "Asserted Patents"). (Dkt. No. 16 at ¶27.) In particular, AX Wireless specifically alleges the Wi-Fi 6 Standard of infringement. (Dkt. No. 75-4). HP withdrew its motion to dismiss after discovery revealed that HP does maintain a regular and established place of business in this district. (Dkt. No. 64). HP did not renew its Motion to Dismiss for Improper Venue, instead filing an answer on August 16, 2023 (Dkt. No. 69) and the instant motion September 15, 2023 (Dkt. No. 75).

1

AX Wireless brought similar suits alleging infringement of the Asserted Patents against Dell, Inc. and Lenovo Group Limited when it brought the instant lawsuit. *AX Wireless LLC v. Dell Inc., et al.*, 2:22-cv-00277 (E.D. Tex 2023); *AX Wireless LLC v. Lenovo Group Limited*, 2:22-cv-00280 (E.D. Tex. 2023). AX Wireless also brought suit against Acer Inc. in February 2023, but has only asserted U.S. Patent No. 11,212,146. *AX Wireless LLC v. HP Inc.*, 2:23-cv-00041 (E.D. Tex. 2023).

## II.     APPLICABLE LAW

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*"). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Id.* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in *Volkswagen I*.

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum

with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Id.* Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314-15; *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

### III. ANALYSIS

#### a. Venue In the Northern District of California

HP alleges venue is proper in the Northern District of California as HP sells the accused products there and is headquartered in the district. (Dkt. 75 at 9 ("Mot.").) As AX Wireless does not contest HP's showing on this point, the Court finds this action could have been brought in the Northern District of

California.

### b. The relative ease of access to sources of proof

HP argues that the allegedly infringing modules were "researched, designed, developed, tested, and certified" by third-party suppliers that AX Wireless subpoenaed in California. (Mot. at 10.) HP argues witnesses for the suppliers, rather than itself, would control relevant documents and source code. (*Id*.) HP also argues "employees who worked on the accused HP products are primarily based in Palo Alto, Taiwan, and Spring, Texas. (*Id*. at 11.) HP further argues HP documents are stored in Palo Alto or otherwise outside of the district. (*Id*.)

AX Wireless counters "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." (Opp. at 9 (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).) AX Wireless further notes that HP has not provided any detail as to the volume of documents in Palo Alto, Taiwan, or its Texas office and thus HP has not shown there are more documents in California. (*Id*.) AX Wireless contends that as "HP researches and develops its PCs, and its Director of Wireless Communication is [in Spring]," HP is likely to have a large volume of documents in Texas. (*Id*.) Next, AX Wireless argues HP failed to identify any third-party documents with any specificity aside from source code. (*Id*.) AX Wireless argues the source code is not in California, rather AX Wireless points out MediaTek made its source code available in Alabama. (*Id*.) AX Wireless further notes documents of the WiFi Alliance, relevant for compliance with the Wifi 6 standard that AX Wireless contends infringes, are located in Texas. (*Id*. at 10.)

In its reply, HP argues AX Wireless "concedes that no sources of proof reside in EDTX. (Reply at 4.) HP contends that as it has shown source code is available in NDCA, this factor weighs in favor of transfer. (*Id*.)

Considering the facts of this case, the Court finds this factor disfavors transfer. The Court finds the bulk of relevant evidence is with HP in this case as the accused infringer. *See In re Genentech*, 566 F.3d

1338, 1345 (Fed. Cir. 2009). HP has not shown that it stores the majority of its documents in its Palo Alto headquarters while AX Wireless has made a convincing showing that relevant documents are likely located in HP's Spring, Texas offices, which are adjacent to this district. Because HP researches, develops, and apparently houses its relevant director in this office, the Court finds it is likely HP keeps associated documents in this office.

While HP's suppliers may have designed and developed the chips central to the accused functionality of the accused products, it is still HP's products that are accused not those of HP's suppliers. *See Chrimar Sys., Inc. v. Dell, Inc.*, No. 6:15-cv-639, slip op. at 7 (E.D. Tex. Feb. 27, 2016); *Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-cv-762, slip op. at 5 (E.D. Tex. Aug. 25, 2015). Further, HP has not identified with any specificity what necessary documents are located in the Northern District of California. As such, while documents and other sources of proof held by HP's suppliers in California weigh in favor of transfer, the Court finds they are outweighed in this case by HP's own documents and those of the WiFi Alliance in Texas.

### a. The Availability Of Compulsory Process To Secure The Attendance Of Witnesses

HP again identifies its suppliers located in the Northern District of California, arguing that they have all relevant knowledge as to the functionality of the accused products, but identifies no particular witnesses[1]. (Mot. at 12-13.) HP further identifies two non-party inventors[2] of the asserted patents and prior

---

[1] While HP does identify specific individuals employed by its third-party suppliers in the Background of its motion, it does not allege any witnesses of its third-party suppliers would require compulsory process. (*See* Mot. at 11-13 (naming no individual witnesses for HP's suppliers).) Further, HP's arguments for this factor focus exclusively on the suppliers themselves rather than the identified individuals. (*Id*. at 12-13.) While compulsory process may be needed to secure the particular individuals HP identifies, there is no argument that they are needed rather, based on HP's argument, it seems all necessary evidence is available from the suppliers themselves. (*See id*. at 3-5; 12-13.) Without such an argument, much less a showing, the Court only considers the suppliers themselves for this factor.

[2] AX Wireless submitted declarations from both inventors stating their willingness to attend trial in Marshall. (Dkt. Nos. 86-1; 86-2.)

art witnesses located in California. (*Id*.) HP notes the prior art witnesses it identifies are of particular relevance as they are the authors of the art cited in Intel's IPR petitions. (Reply at 5.)

AX Wireless first responds that HP's suppliers do not weigh in favor of transfer. (Opp. at 10.) AX Wireless notes that all three of HP's identified suppliers are also within the subpoena power of this Court based on their facilities in Texas. (*Id*.) Further, AX Wireless argues that HP's suppliers should be given less weight under this factor as HP made no showing that they are likely unwilling to testify. (*Id*.) AX Wireless further identifies the Wi-Fi Alliance in Austin as having relevant information to its infringement case relating to the Wi-Fi 6 standard for which compulsory process may be needed. (*Id*. at 11.)

Considering the facts of this case, the Court finds this factor slightly disfavors transfer. HP has failed to show any of Intel, Qualcomm, and MediaTek are only subject to compulsory process in California. Rather, each is within this Court's subpoena power as well. *See* Fed. R. Civ. Proc. 45(c)(1)(B)(ii).

Of the third parties subject to compulsory process in only one district, the Court finds on balance they weigh slightly against transfer. First, HP's identification of several prior artists is given little weight. While HP has argued the prior art they authored is relevant based on Intel's assertion of the prior art before the PTAB, HP has not shown the authors themselves are relevant. Indeed, Intel did not feel any need to rely on their testimony when it submitted its IPR Petition. *See* IPR2023-01144 (providing only the cited prior art references with no author declaration). The identified inventors located in California weigh in favor of transfer, though under the willing witness factor as both have stated their willingness to attend trial in Marshall. Finally, as the Wi-Fi Alliance is located in Texas and HP has not shown that it would be subject to compulsory process in California, it weighs against transfer.

### b. The Cost of Attendance for Willing Witnesses

HP identifies several categories of witnesses for whom it alleges attendance at trial would be less costly in the Northern District of California. (Mot. at 11.) HP identifies two inventors, several prior art authors, and several HP witnesses. (*Id*.) Of the potential supplier witnesses, HP argues that witnesses from Intel are in California, Oregon, Massachusetts, and Israel. (*Id*. at 4). HP

also identifies several MediaTek employees in the Northern District of California and several Qualcomm witnesses in San Diego, California. (*Id*.) Of its own employees, HP identifies witnesses in Palo Alto, San Diego, and Taiwan. (*Id*. at 7.) HP also identifies two inventors and several prior artists in California. (*Id*. at 6-7).

AX Wireless responds that HP's identification of Qualcomm and MediaTek witnesses is speculative without a declaration or something more from those third parties. (Opp. at 12-13.) Likewise, AX Wireless attacks the declaration submitted by Ms. Azizi identifying potential Intel witnesses as unreliable based on her apparent lack of investigation or knowledge of Intel's development operations in Texas. (*Id*. at 12-14.)

AX Wireless also argues HP's identification of its own witnesses is faulty. AX Wireless notes that two critical HP witnesses, including HP's Director of Wireless Communication and Distinguished Technologist, are located in HP's Spring, Texas office. (*Id*. at 3.)

Considering the facts of this case, the Court finds this factor weighs somewhat in favor of transfer. HP's identification of third parties both for this factor and for compulsory process misapplies the law. These two factors are distinct, availability of compulsory process applies to *unwilling* witnesses while this factor is focused on the cost of attendance for *willing* witnesses. *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *5 (E.D. Tex. June 14, 2022); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:20-cv-319, 2021 WL 4453590, at *3 (E.D. Tex. Sept. 29, 2021). As such, the third parties the Court considered for this factor are the inventors since they have stated their willingness to attend trial in Marshall. The remaining witnesses should be argued under compulsory process.

The Court finds the party witnesses[3] weigh somewhat against transfer. AX Wireless has identified two key witnesses in Texas and HP has identified several witnesses in California and Taiwan[4]. HP's identified witnesses relate to sales, marketing, and technical topics, (*see* Dkt. 76-1), while the AX Wireless identified witnesses appear to relate to only technical topics. The Northern District of California is more convenient for witnesses on two of the three topics. As to technical topics, the Court is not convinced by HP's identification of witnesses. AX Wireless has shown HP's Texas office is the site of relevant research and development and contains two key technical witnesses. This along with HP's declarant's apparent lack of knowledge as to HP's Texas operations, (*see* Opp. at X), leads the Court to question HP's identification of technical witnesses. The Court finds AX Wireless's identified witnesses more impactful. On balance, the Court finds that this element is neutral.

### c. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011).

---

[3] AX Wireless further identifies its corporate witness but does not identify any testimony he might provide. As such the Court does not heavily weigh AX Wireless's corporate witness. *See In re Apple Inc.*, 2023 WL 5274629 at *2.

[4] HP only identifies these witnesses in a footnote and fails to identify their relevance in its motion or even affirmatively allege any particular relevance. (*See* Mot. at 7 n.9) Rather this information is only available in the Hoopes Declaration. (Dkt. 76-1.) The Local Rules prescribe that the "briefing shall contain a concise statement of the reasons in support of the motion and citation of authorities upon which the movant relies" and "shall not exceed fifteen pages." L.R. 7(a)(2) & (c). Here, HP apparently relies not on its briefing to provide the reasons its motion should be granted, but rather an attached declaration. While HP may rely on such a declaration to *support* its reasoning, it may not bury its reasoning within.

HP argues that because the various AX Wireless actions are currently split between Judge Gilstrap and Judge Schroeder and all defendants seek transfer to the Northern District of California, transfer could result in result in consolidation before a single judge. (Mot. at 14.)

AX Wireless argues HP delayed by filing this Motion 14 months after the complaint and that it has instead actively litigated in this district for nearly a year prior to filing this Motion. (Opp. at 13.) HP only counters that timing is relevant in only rare circumstances. (Reply at 5.)

First, HP's alleged potential efficiency in consolidating all AX Wireless's cases before a single judge in the Northern District of California is entirely speculative. Such an argument relies first on all defendants showing venue is clearly more convenient in the Northern District of California. Second, HP also relies on the notion the Northern District of California would assign each case to the same Judge, but HP has offered no evidence that this is the Northern District of California's practice. Finally, any efficiencies to be gained from having all three actions heard by a single judge are all already largely present as each case has been referred to the undersigned for all pretrial proceedings. This argument does not support transfer. Rather, each of these cases being in the Eastern District of Texas weighs against transfer, particularly after Dell's transfer was denied.

Further, HP materially delayed filing this motion. HP's delay resulted in this Motion becoming ripe after the completion of claim construction briefing and just two weeks before the *Markman* hearing and the deadline to substantially complete document production. (*See* Dkt. No. 68 at 3). HP's argument that timing is only relevant in "rare and special" circumstances misstates the law. *In re Radmax* does not provide that a party's delay in seeking transfer is only relevant in rare circumstances, rather it is the "delay associated with transfer." 720 F.3d 285, 289 (5th Cir.

9

2013). This would include the anticipated delay in the transferee district in setting a scheduling conference and becoming acquainted with the case, not HP's choice to not seek transfer sooner.

Considering the facts before the Court, the Court finds this factor weighs significantly against transfer. This Court has invested significant judicial resources toward the merits of this case during HP's delay in deciding to bring this motion.

### d. The Administrative Difficulties Flowing from Court Congestion

HP argues the "[t]ime-to-trial in the EDTX and NDCA are within a few months of each other" and thus this factor is neutral. (Mot. at 15.) AX Wireless argues the Northern District of California is more congested and median time to trial in the Northern District of California is 36.6 months while only 16.7 in the Eastern District of Texas. (Opp. at 14-15.)

Based on the facts before the Court, the Court finds that the time to trial in the Eastern District of Texas is faster and this factor weighs against transfer. While the parties' allegations of wildly different times to trial seems irreconcilable, an examination of the parties' sources of proof demonstrates HP's evidence is deficient. HP provides charts showing the statistics for the disposition of 242 cases in this district and 81 cases in the Northern District of California. (Dkt. Nos. 83-63, 83-64.) In contrast AX Wireless shows statistics for the disposition of some 25,000 cases in this district and some 57,000 cases in the Northern District of California. (Dkt. No. 86-39.) HP appears to have carved out something far less than the entire docket for both districts. Without any explanation such a showing is facially deficient, and HP's showing is given no weight.

### e. The Local Interest in Having Localized Interests Decided at Home

Here, HP argues that the Northern District of California has a local interest based on the work it alleges is done by its third-party suppliers in that district as well as the presence of its headquarters. (Mot. 14-15.) AX Wireless responds noting many of HP's employees involved in

the accused modules are located outside of the Northern District of California and the actual design and development occurs outside of the district. (Opp. at 14-15.)

The Court finds this factor weighs somewhat in favor of transfer. HP has shown its headquarters and much of its suppliers' activities are in the Northern District of California. While AX Wireless has shown significant portions of HP's work and that of its suppliers occur outside of the Northern District of California, this only tempers the weight of this factor but does not render it neutral.

### f. Remaining Public Interest Factors

The parties agree that the remaining public interest factors are neutral. As such, the Court finds these factors are neutral.

### g. Weighing of the Factors

In view of the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re RadmAX, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id*. Having weighed the foregoing factors, the Court concludes that the Northern District of California is not "clearly more convenient."

## IV.     CONCLUSION

The Court therefore **DENIES** HP's Motion **(Dkt. No. 75)** for the reasons provided above.

**SIGNED this 11th day of December, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE